IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Case No. 06-CR-40022 |
| ) | |
| TIMOTHY LEE LORINCZ,    ) | |
| ) | |
| Defendant.    ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant Lorincz's Motions for Compassionate Release (D. 71, 79) and the Government's Response (D. 80). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

Beginning in 1998, and into the early 2000s, Defendant was the leader of a methamphetamine ring, and one of the main manufacturers and suppliers of methamphetamine in the Quad Cities. (D. 38, ¶¶ 14-22). On January 27, 2006, Defendant was charged in Rock Island County, Illinois, with conspiring with others to manufacture, distribute, and possess with intent to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture containing methamphetamine. *Id.* at ¶ 1. On February 16, 2006, a two-count indictment was filed against Defendant in this Court. *Id.* at ¶ 2. Count One charged that from January 2002 to June 2004, the Defendant, and others, knowingly and intentionally manufactured, distributed, and possessed with intent to distribute 50 grams or more of methamphetamine. *Id.* Count Two charged from January 2002 to June 2004, Defendant manufactured 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing methamphetamine. *Id.*

On May 25, 2006, Defendant pled guilty to Counts One and Two pursuant to a written plea agreement. *Id.* at ¶ 5. On September 14, 2006, Defendant was sentenced to 276 months of imprisonment on both counts to run concurrently, followed by ten years of supervised release. d/e on 09/14/2006. On March 4, 2015, Defendant's sentence was reduced to 262 months, with both counts to run concurrently, pursuant to a 18 U.S.C. § 3582(c)(2) motion. (D. 60).

At the time of sentencing, Defendant had a criminal history category of IV, based on prior convictions for unlawful possession of cannabis and unlawful possession with intent to deliver a controlled substance. (D. 38, ¶¶ 39-40). Defendant committed the instant offense while on probation less than two years after his release from prison. *Id.* Defendant currently resides at the Federal Correctional Institution ("FCI") Oxford in Oxford, Wisconsin. His projected release date from the Bureau of Prisons ("BOP") is November 15, 2024.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements

since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. In *Gunn*, the Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's

3

views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case. Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

The Court finds the exhaustion requirements have been met, and therefore addresses this matter on the merits. Defendant is a 44-year-old male who seeks compassionate release due to: (1) a medical condition that increases his risk for severe illness if he contracts COVID-19, specifically, obesity, and the outbreak of COVID-19 throughout the BOP; (2) the need to serve as the primary caregiver for his parents who are in poor health; and (3) the § 3553(a) factors, which he claims weigh in favor of compassionate release.

### I. Defendant's Medical History and the COVID-19 Pandemic

Defendant's most recent medical records show he has a BMI of 31.6. (D. 76, p. 1). According to the CDC's website, having a BMI greater than 30 increases the risk for severe illness from COVID-19. (*Center for Disease Control and Prevention, People at Increased Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited on 04/15/2021)). Other than obesity, Defendant has no other underlying medical conditions that increase his risk of severe illness from COVID-19. (D. 76, 77).

Defendant's records also show he tested positive for COVID-19 in December 2020 and was asymptomatic. (D. 77, p. 39). It is obviously a good sign that he previously had COVID-19 with no complications. While Defendant argues that his previous bout with COVID-19 does not provide him with assurance that he will not be reinfected, the Central District of Illinois has

4

previously held that "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Here, the Court believes Defendant has failed to meet his burden to establish extraordinary and compelling reasons for compassionate release. Most significantly, the risk associated with contracting COVID-19 is due to the risk of increased severity of symptoms and death for those who are most likely to have a strong reaction to the virus. Defendant's general concern about being reinfected with the virus and possibly suffering serious complications in the future is speculative and not supported by his medical history.

Additionally, Defendant claims at the time he filed his Motion, FCI Oxford, had experienced two significant outbreaks of COVID-19 since October 2020, which resulted in over 75% of its inmate population testing positive. (D. 79, p. 2). Today, FCI Oxford has eight positive cases, with 678 inmates and 75 staff already recovered, including the Defendant. (*Federal Bureau of Prisons, COVID-19 Coronavirus,* https://www.bop.gov/coronavirus/ (last visited 04/15/2021)). While the number of people previously infected at FCI Oxford is alarming, it appears the facility has controlled the spread. Furthermore, the Court is cautiously optimistic about the COVID-19 vaccine improving conditions within prisons, especially as it becomes more readily available.

II.    **Family Circumstances**

Defendant also argues that he is entitled to compassionate release due to his parents' deteriorating health. (D. 79, pp. 10-12). Pursuant to USSG § 1B1.13, familial hardship can constitute grounds for compassionate release in two instances: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." § 1B1.13 n.1(C)(i)-(ii). However, in *United States v. Gunn,* the Seventh Circuit clarified that courts are not bound by the Sentencing Commission's analysis in § 1B1.13 regarding the definition of "extraordinary and compelling" reasons, but strongly suggested that those guidelines are still relevant to district courts' decisions. 980 F.3d at 1180-81.

Here, Defendant has submitted three pages of medical records for both his parents. (D. 78). The records show his father is 68 years old, self-employed, and suffers from stage-three kidney disease, cirrhosis of the liver, and hypertension. (D. 78, p. 1). In June 2020, his doctor noted that his BMI was 30.93, and he encouraged daily physical activity and a well-balanced diet. *Id.* at 2. Defendant's mother is 69 years old and suffers from COPD and emphysema. *Id.* at p. 3. There was no evidence in the records produced that either of Defendant's parents' health conditions have left them "incapacitated," or a doctor's recommendation for third-party care. Furthermore, Defendant has a brother who can help their parents when needed, although not fulltime. Therefore, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release to care for his parents.

**III.    The § 3553(a) factors do not warrant a sentence reduction**

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community."

USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A).

The Court's consideration of the § 3553(a) factors also militates against early release for this Defendant. This Court previously reduced Defendant's sentence from 276 months to 262 months. (D. 69, D. 100). The Court finds this sentence appropriate considering the prior reduction, the fact that Defendant's offense was repeated and serious, and his criminal history. Additionally, when Defendant was previously released, he continued to manufacture and/or sell drugs in violation of his probation. The BOP also still classifies Defendant as a "medium" recidivism risk level. Accordingly, the Court finds that his early release would not be justifiable under the § 3553(a) factors.

## CONCLUSION

For the reasons set forth above, Defendant's Motions for Compassionate Release [71], [79] are DENIED.

Entered: April 16, 2021.

                                               s/ Michael M. Mihm
                                               Michael M. Mihm
                                               United States District Judge